**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**STATESVILLE DIVISION**

| | |
|---|---|
| JOSEPH ALLEN McINTOSH, JR.,<br>Plaintiff,<br>v.<br>CATAWBA COUNTY, NORTH CAROLINA; and DONALD G. BROWN II, in his official capacity as Sheriff of Catawba County,<br>Defendants. | **Civil Action No. 5:26-cv-**<br>________<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Joseph Allen McIntosh, Jr. ("Mr. McIntosh"), by counsel, alleges as follows, based on his personal knowledge concerning his work and compensation and, as to matters within Defendants' records and control, on information and belief after reasonable inquiry:

## NATURE OF THE ACTION

1. This is an individual action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, to recover unpaid overtime, unpaid straight-time compensation recoverable in overtime work periods, compensation for undercredited statutory compensatory time, liquidated damages, reasonable attorney's fees, and costs.

2. Defendants applied a recurring fourteen-day schedule to Mr. McIntosh using fixed entries totaling 85.75 hours. During the applicable limitations period, he performed additional compensable duties beyond that fixed credit, and his actual hours worked exceeded the applicable overtime threshold in multiple work periods without full payment or lawful compensatory-time credit.

3. Defendants also treated qualifying overtime on an hour-for-hour basis rather than preserving the required time-and-one-half premium. Mr. McIntosh seeks the compensation due for that overtime, including any payment required at separation for accrued statutory compensatory time that remained unused and unpaid.

4. Mr. McIntosh brings this action solely for himself. He does not seek notice to other employees or recovery of any other person's wages or damages.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the claims arise under the FLSA. The private right of action and requested remedies are authorized by 29 U.S.C. § 216(b).

6. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2). Both Defendants reside in this District for venue purposes, and a substantial part of the events and omissions giving rise to these claims occurred in Catawba County, North Carolina.

7. Catawba County lies within the Statesville Division of the Western District of North Carolina.

## PARTIES AND FLSA COVERAGE

8. Mr. McIntosh is an adult resident of Catawba County, North Carolina. He was employed as a deputy sheriff from December 3, 2012, through May 14, 2026. The County's human-resources records classified his position as nonexempt.

9. Mr. McIntosh performed ordinary deputy-sheriff duties under the Sheriff's Office chain of command and intermediate supervisors. He did not occupy an intimate, high-level, policymaking, or immediate-advisory position with the elected Sheriff. He was not a member of the Sheriff's personal staff within 29 U.S.C. § 203(e)(2)(C)(ii)(II). See *Brewster v. Barnes*, 788 F.2d 985, 990–91 (4th Cir. 1986).

10. Defendant Catawba County, North Carolina (the "County"), is a North Carolina body politic and a public agency within 29 U.S.C. § 203(x). It funded and issued Mr. McIntosh's compensation and benefits and maintained his human-resources, payroll, time, leave, and compensatory-time records.

11. On information and belief, the County also participated in and administered the March 2020 payroll conversion alleged below and determined or participated in determining the pay rates, payroll codes, recorded hours, and compensatory-time credits recognized in its payroll system. Its role in the challenged compensation practices extended beyond merely funding the Sheriff's budget.

12. Defendant Donald G. Brown II is the Sheriff of Catawba County and is sued only in his official capacity (the "Sheriff"). Through the Office of Sheriff, he and authorized supervisors hired and discharged personnel, assigned and supervised work, set schedules, instructed personnel how to record time, and approved or caused the approval of Mr. McIntosh's time entries.

13. North Carolina law assigns the Sheriff exclusive authority to hire, discharge, and supervise employees of his office. N.C. Gen. Stat. § 153A-103(1). The federal employer allegations here concern the respective roles of the Sheriff and the County in controlling Mr. McIntosh's work and compensation, not a claim that the County possessed the Sheriff's exclusive personnel authority.

14. The Sheriff controlled Mr. McIntosh's work, schedules, supervision, and reporting requirements, while the County administered the compensation method, rates, and payroll system through which that work was paid or omitted. On information and belief, they shared or allocated responsibility for essential terms of his employment and jointly employed him under 29 U.S.C. §§ 203(d) and 203(g). See *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125,

141–43 (4th Cir. 2017). Alternatively, each Defendant's liability is pleaded according to that Defendant's own conduct and employer status under Federal Rule of Civil Procedure 8(d).

15. At all relevant times, Mr. McIntosh was a covered, nonexempt employee, and Defendants were covered public-agency employers. 29 U.S.C. §§ 203(e)(2)(C), 203(s)(1)(C), and 203(x). On information and belief, the employing public agency employed at least five employees in law-enforcement activities in each relevant workweek; the exemption in 29 U.S.C. § 213(b)(20) therefore does not apply.

## FACTUAL ALLEGATIONS

16. Mr. McIntosh's assignments included the Justice Center, patrol, and Lake Norman Water Patrol duties in the Sherrills Ford area. His duties included responding to calls, completing reports, transporting persons, appearing in court, attending training, maintaining operational readiness, and performing other assigned law-enforcement work.

17. Before March 2020, his recurring patrol schedule consisted of seven nominal twelve-hour shifts in fourteen days. He was required to report before the posted shift start and remain through operational transition. Supervisors nevertheless directed him to record 11.5 hours on six shifts and 11 hours on the seventh, totaling exactly 80 hours, rather than all time actually worked.

18. On March 3, 2020, Sheriff Brown issued a memorandum titled "Work Schedule Changes effective 3/7/20." Effective March 7, 2020, it changed the recurring entry from 80 to 85.75 hours per two-week period and directed that each of the seven regularly scheduled days be recorded as 12.25 hours. It stated that the change compensated meal periods and shift-change communications and that uninterrupted meal periods were not guaranteed.

19. Human-resources records reflected the same structure. A 2014 position description described rotating shifts totaling 80 hours per two-week period, and a June 2020 position record described 12.25-hour shifts totaling 85.75 hours per period.

20. The pay advice for the period ending March 6, 2020, recorded 80 paid hours at $20.693180 per hour, totaling $1,655.45. The advice for the next period recorded 85.75 paid hours at $19.305591 per hour, totaling $1,655.46. These paid units illustrate the compensation conversion; they are not alleged to establish hours actually worked during those periods.

21. The pre-limitations-period practices and March 2020 records are pleaded as background relevant to the compensation method, notice, and willfulness. Mr. McIntosh does not seek untimely damages merely because those earlier practices occurred, and he does not contend that a prospective hourly-rate adjustment was independently unlawful merely because gross pay remained essentially unchanged.

22. Defendants treated or represented the recurring fourteen-day tour as a law-enforcement work period under 29 U.S.C. § 207(k). To obtain that partial overtime exception, they must establish a qualifying work period. Such a period must be an established, regularly recurring period of seven to twenty-eight consecutive days; it need not coincide with the payroll period or duty cycle. 29 C.F.R. § 553.224.

23. For a valid fourteen-day law-enforcement work period, overtime begins after 86 hours actually worked. 29 C.F.R. § 553.230(c). If Defendants establish a different qualifying Section 207(k) work period, the corresponding maximum applies. If they establish no qualifying work period, the ordinary forty-hour workweek standard under Section 207(a) applies, without averaging hours across workweeks.

24. During his employment within the applicable limitations period, Mr. McIntosh regularly performed compensable work beyond the fixed entries. That work included calls continuing

past shift; post-call reports, arrest and booking paperwork, and evidence tasks; involuntary-commitment transports; required court appearances and compensable training; and required vehicle, equipment, readiness, and pre-shift or post-shift duties not included in the recorded hours.

25. The fixed 12.25-hour entries were intended to include scheduled meal and shift-change time. Mr. McIntosh does not count those hours twice. He seeks compensation only for additional compensable work not already included in the fixed credit or otherwise paid or lawfully credited.

26. On numerous shifts, Mr. McIntosh actually performed law-enforcement duties while eating or had meals interrupted by duty. He seeks compensation for actual duty time and any meal interval spent predominantly for Defendants' benefit, but only to the extent not already included in paid or credited time. Mere radio availability, without the necessary restrictions or actual duty, is not alleged to make every meal compensable. See 29 C.F.R. § 553.223(b); *Roy v. County of Lexington*, 141 F.3d 533, 544–45 (4th Cir. 1998).

27. In multiple fourteen-day periods within the limitations period, Mr. McIntosh actually worked the recurring 85.75-hour schedule and more than fifteen additional minutes of the duties described above. His actual compensable work therefore exceeded 86 hours in those periods. Defendants did not pay cash overtime or credit lawful statutory compensatory time for all hours above that threshold.

28. Mr. McIntosh relies on hours actually worked, not merely paid hours. Vacation, sick leave, holidays not worked, and compensatory time used are not counted as hours worked toward the statutory overtime threshold. Likewise, a payroll entry of 85.75 hours does not, by itself, establish that he worked that many hours in a period containing paid leave.

29. When additional calls, reports, transports, training, court, or similar duties arose, supervisors directed or permitted the additional time to be moved, reduced, or used within the pay period on an hour-for-hour basis. Mr. McIntosh does not challenge a lawful schedule adjustment that left actual hours worked at or below the applicable maximum. He challenges the failure to pay or credit the required premium when his actual hours in the completed statutory work period still exceeded that maximum.

30. Defendants knew or had reason to know that Mr. McIntosh performed this work. Sheriff's Office supervisors assigned and monitored calls and transports, required the resulting reports and paperwork, scheduled court and training duties, imposed reporting requirements, and reviewed or approved fixed entries that did not capture all of his work. The County administered the challenged payroll method and maintained the resulting records.

31. Mr. McIntosh was paid using identified hourly rates and recorded hours. His pay advices calculated earnings by multiplying paid hours by the applicable rate. He alleges that his compensation agreement and understanding required payment for each compensable hour at the applicable straight-time rate through the overtime threshold, and did not provide that a fixed biweekly amount compensated all unrecorded work without additional compensation.

32. The scope of that compensation agreement must be determined from the actual employment arrangement, not the hourly-rate label alone. Mr. McIntosh seeks overtime-gap-time compensation only for straight-time pay due under that arrangement and left unpaid in periods in which he actually worked statutory overtime.

33. His May 22, 2026 pay advice recorded 85.75 regular hours at $28.43 per hour and displayed year-to-date entries of 35.63 hours as "FLSA Earned" and 48.39 hours as "FLSA Used." These entries evidence a statutory compensatory-time program, but the year-to-date figures do not establish his opening balance or the balance remaining at separation.

34. For overtime that remained above the applicable maximum in completed work periods, Defendants failed to credit the full time-and-one-half premium through the hour-for-hour practices alleged above. On information and belief, the resulting undercredits were not fully corrected or paid in his final compensation.

35. Mr. McIntosh's employment ended on May 14, 2026. The payroll materials available to him do not disclose the complete compensatory-time transaction history, opening balance, conversion entries, closing balance, or termination calculation. He seeks the payment required for any statutory compensatory time that properly accrued and remained unused and unpaid at separation, including time omitted through the undercrediting alleged above. He does not infer a particular positive balance merely from the absence of a complete ledger.

36. Defendants maintain the complete records necessary to determine the amounts due, including schedules, time entries and edit histories, dispatch and call records, reports, court and training records, compensation agreements, payroll codes, regular-rate components, and compensatory-time accrual, use, and payment transactions. Although Mr. McIntosh has some payroll and personnel records, those complete records are not available to him.

37. The March 2020 memorandum, human-resources records, payroll conversion, later pay records, and corroborating witness information reflect a standardized system rather than an isolated clerical error. Mr. McIntosh relies on that evidence to establish Defendants' conduct, knowledge, and willfulness concerning his own compensation.

38. In approximately late 2019 or early 2020, Mr. McIntosh personally heard Sheriff Brown state, in substance, that the timesheet situation was illegal and that the Sheriff's Office was trying to fix it. After changing the fixed credit in March 2020, Defendants continued during the limitations period to require or permit work beyond the recorded hours without fully accounting for that work and the statutory premium due.

39. Defendants' knowledge of the scheduling and reporting requirements, their knowledge of Mr. McIntosh's additional duties, their approval of incomplete fixed entries, and the continued hour-for-hour treatment of qualifying overtime support the allegation that they knew, or recklessly disregarded whether, these practices violated the FLSA. Mr. McIntosh alleges willful violations and seeks recovery for timely claims under the three-year period in 29 U.S.C. § 255(a), or alternatively under the ordinary two-year period.

## COUNT I

## UNPAID OVERTIME AND OVERTIME GAP TIME

## 29 U.S.C. §§ 207(a), 207(k), AND 216(b)

40. Mr. McIntosh incorporates paragraphs 1 through 39 as if fully set forth herein.

41. Defendants were required to include all compensable hours worked and provide the compensation required by 29 U.S.C. § 207 for hours above the applicable maximum: 86 hours in a valid fourteen-day law-enforcement work period, the corresponding maximum for another qualifying Section 207(k) period, or forty hours in a workweek if no qualifying Section 207(k) period existed.

42. Any cash overtime due must be calculated at not less than one and one-half times the lawful regular rate, including remuneration required by 29 U.S.C. § 207(e), subject to credit for compensation already paid as permitted by law. Statutory compensatory time may replace cash overtime only to the extent authorized by Section 207(o).

43. Mr. McIntosh performed the additional work alleged above, and his actual compensable hours exceeded the applicable maximum in multiple work periods. Defendants knew or should have known of that work but failed to pay or lawfully credit all overtime compensation due.

44. Alternatively, absent a qualifying Section 207(k) work period, Defendants could not avoid overtime by averaging his hours across two workweeks. Overtime was due in each workweek

in which his actual compensable hours, including the additional duties alleged above, exceeded forty.

45. In overtime work periods, Defendants also failed to pay all straight-time compensation due under the hourly compensation arrangement alleged in paragraphs 31 and 32. Mr. McIntosh seeks that unpaid compensation only to the extent recoverable under *Conner v. Cleveland County, N.C.*, 22 F.4th 412, 426–27 (4th Cir. 2022), and *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1272–73 (4th Cir. 1996). He does not assert a pure gap-time claim for periods without a statutory overtime violation.

46. These violations caused actual unpaid compensation in an amount to be determined from the work-period records and other evidence. Mr. McIntosh seeks no duplicate recovery and acknowledges all payments and statutory credits properly attributable to the obligations at issue.

47. Defendants' violations were willful for the reasons alleged above. Under 29 U.S.C. § 216(b), Mr. McIntosh seeks unpaid compensation, an equal amount as liquidated damages, reasonable attorney's fees, and costs, subject to any defense Defendants establish under 29 U.S.C. § 260.

**COUNT II**

**STATUTORY COMPENSATORY-TIME VIOLATIONS**

**29 U.S.C. §§ 207(o) AND 216(b)**

48. Mr. McIntosh incorporates paragraphs 1 through 39 as if fully set forth herein.

49. A public agency may substitute statutory compensatory time for cash overtime only in accordance with 29 U.S.C. § 207(o) and 29 C.F.R. §§ 553.20–553.28, including a qualifying agreement or understanding reached before the work is performed and credit of not less than one and one-half hours for each statutory overtime hour.

50. To the extent a qualifying agreement or understanding applied, Defendants violated Section 207(o) by failing to credit the required time-and-one-half premium for Mr. McIntosh's qualifying overtime, as alleged above. To the extent no qualifying agreement or understanding applied, cash overtime was due instead. These theories are pleaded in the alternative under Federal Rule of Civil Procedure 8(d).

51. Upon termination, accrued statutory compensatory time that remained unused had to be paid at a rate not less than the higher of Mr. McIntosh's average regular rate during his last three years of employment or his final regular rate. 29 U.S.C. § 207(o)(4); 29 C.F.R. § 553.27.

52. The undercrediting alleged above deprived Mr. McIntosh of compensation for qualifying overtime. If that overtime was subject to a valid compensatory-time arrangement and the properly accrued time remained unused and unpaid at separation, he seeks its value at the statutory termination rate. Any additional accrued, unused, and unpaid statutory balance established by the transaction records is subject to the same payment requirement.

53. Mr. McIntosh seeks the remedies authorized by 29 U.S.C. § 216(b) for the violations proved, including unpaid compensation, an equal amount as liquidated damages subject to 29 U.S.C. § 260, reasonable attorney's fees, and costs. The claims under Counts I and II are complementary and alternative to the extent they address the same overtime; the same loss shall not be recovered twice.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. McIntosh respectfully requests that the Court:

a. Enter judgment in his favor against Defendants, jointly and severally to the extent their employer status and liability are established;

b. Award unpaid overtime compensation using the correct regular rate and applicable statutory work period, together with unpaid straight-time compensation recoverable in overtime work periods under controlling law;

c. Award compensation necessary to remedy undercredited statutory compensatory time, including any accrued statutory compensatory time remaining unused and unpaid at separation, valued at the rate required by 29 U.S.C. § 207(o)(4), without duplicating recovery under Count I;

d. Award an equal amount as liquidated damages under 29 U.S.C. § 216(b), subject to 29 U.S.C. § 260;

e. Apply the three-year limitations period to willful violations under 29 U.S.C. § 255(a), or the ordinary two-year period as applicable;

f. Award prejudgment interest to the extent legally available on amounts for which liquidated damages are not awarded, and post-judgment interest under 28 U.S.C. § 1961;

g. Award reasonable attorney's fees and costs under 29 U.S.C. § 216(b); and

h. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

54. Under Federal Rule of Civil Procedure 38, Mr. McIntosh demands a trial by jury on all issues so triable.

Respectfully submitted this 16th day of September, 2026.


| | |
|---|---|
| s/ C. Christopher Adkins | s/ Christerfer R. Purkey |
| C. Christopher Adkins | Christerfer R. Purkey |
| N.C. State Bar No. 46950 | N.C. State Bar No. 53584 |
| cadkins@uwharrielegal.com | cpurkey@uwharrielegal.com |

ADKINS & PURKEY, PLLC

217 W. Main Street

Locust, North Carolina 28097

Telephone: (704) 880-9388

Counsel for Plaintiff

## VERIFICATION

I, **Joseph Allen McIntosh, Jr**., being duly sworn, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Complaint and know the contents thereof; that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief; and that the matters stated upon information and belief are believed by me to be true.

Executed on this 17th day of September, 2026.

Joseph Allen McIntosh Jr (SEAL)
**Joseph Allen McIntosh, Jr**

**STATE OF NORTH CAROLINA**
**COUNTY OF** Mecklenburg

Sworn to and subscribed before me

This 17th day of September, 2026.

NOTARY PUBLIC

ANA RODRIGUEZ NOTARY MY COMMISSION EXPIRES 11/28/2026 PUBLIC MECKLENBURG COUNTY, NC

Printed Name of Notary Public: Ana Rodriguez

My commission expires: 11/28/2026